UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-CV-60910-LENARD/VALLE

PEDRO ORTIZ,

      Petitioner,

v.

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, and
FLORIDA ATTORNEY GENERAL,

      Respondents.
_____/

## AMENDED REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS CAUSE is before the Court following an evidentiary hearing on Petitioner Pedro

Ortiz's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition"),

which was referred to the undersigned by U.S. District Judge Joan Lenard.  (ECF Nos. 14, 60, 69).

After due consideration of the record in the case,[1] the parties' Joint Status Report (ECF No. 79),

the testimony and evidence submitted during the November 18, 2022, evidentiary hearing

(ECF No. 115) ("Hr'g Tr."), the parties' written closing arguments, responses, and post-hearing

submissions (ECF Nos. 109, 110, 111, 112, 113, 114), the undersigned finds that Petitioner has

failed to show that he exercised reasonable diligence in pursuing his federal habeas rights, a

---

[1] Most relevant to this Report and Recommendation are ECF Nos. 1 (Petition), 4 (Memorandum in Support of Petition), 14 (Amended Petition), 17 (Respondent's Response to Petition), 18 (Petitioner's Reply), 23 (Respondent's Supplemental Response), 54 (Petitioner's Motion to Expand Record), 55 (Petitioner's Objections to Report and Recommendation), 56 (Appendix in Support of Petitioner's Objections), 58 (Petitioner's Supplemental Objections), 93 (Declaration of Pedro Ortiz), 98 (Petitioner's Motion to Admit Bar Records), and 101 (Joint Hearing Exhibits ("Jt. Exhs.")).

prerequisite to equitable tolling of the limitations period. Accordingly, the undersigned recommends that the Petition be **DISMISSED** as untimely.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

Petitioner was tried and convicted in state court of first-degree murder (Count 1), trafficking in cocaine (Count 3), conspiracy to traffic in cocaine (Count 4), and armed robbery (Count 5). (ECF No. 23-1 at 16-17, 1653-58). Thereafter, Petitioner was adjudicated guilty and sentenced to life imprisonment on Counts 1 and 5 and 19.3 years in prison on Counts 3 and 4. *Id.* at 1679-1700.

The lengthy procedural and factual history of this case has been fully set forth in previous orders of the Court and is incorporated by reference.[2] *See, e.g.,* (ECF No. 31) (Magistrate Judge's Report and Recommendation) (the "Initial Report"); (ECF No. 60) (District Judge's Order declining to adopt Initial Report). To summarize, Petitioner filed a direct appeal and several *pro se* motions for post-conviction relief in state court. (ECF No. 60 at 2-4). Relevant to the instant Petition, there is no dispute that the federal limitations period under the Antiterrorism and Effective Death Penalty Act (the "AEDPA") began to run on November 1, 2013, when the Fourth District Court of Appeals (the "Fourth DCA") issued its mandate. *Id.* at 3. Thus, Petitioner had until November 1, 2014 to file his federal habeas petition. *Id.* at 6; *see also* (ECF No. 18 at 4). Petitioner, however, did not file his Petition until April 18, 2016.[3] *See generally* (ECF No. 1).

---

[2] As noted by the District Judge in her Order, "Petitioner appears to be in substantial agreement with [the Magistrate Judge's] recitation of the relevant background [in the Initial Report]." (ECF No. 60 at 2). Furthermore, although Petitioner believes "that [the Magistrate Judge] miscalculated by fifteen days the amount of time the federal limitations period ran untolled[,]" Petitioner nonetheless "concedes that this miscalculation is 'of no import or impact'" to his tolling argument. *Id.* at 2 n.2; *see also* (ECF No. 58 at 1).

[3] Petitioner filed an Amended Petition on July 5, 2016. (ECF No. 14).

On September 16, 2019, Magistrate Judge Reid issued the Initial Report, recommending that Petitioner's federal habeas Petition be dismissed as time barred. *See generally* (ECF No. 31). Thereafter, following a review of Petitioner's objections and supplemental objections to the Initial Report, *see* (ECF Nos. 55, 58), District Judge Lenard declined to adopt the Initial Report and referred the matter to the magistrate judge to conduct an evidentiary hearing limited to whether the federal limitation period should be equitably tolled to permit Petitioner's untimely Petition to be reviewed on the merits and to issue an Amended Report and Recommendation, as necessary. (ECF No. 60 at 19-21).

The matter was subsequently reassigned to the undersigned, who conducted an evidentiary hearing (the "hearing") on November 18, 2022. (ECF Nos. 67, 92); *see also* (Hr'g Tr.), which is incorporated by reference. Pursuant to Judge Lenard's Order, the undersigned must now determine whether Petitioner has established the three prongs necessary for equitable tolling of the limitations period: (i) whether Petitioner diligently pursued his rights; (ii) whether Petitioner's attorney (Bernard Daley, Esq.) abandoned Petitioner; and, if so, (iii) whether there is a causal connection between the attorney abandonment and Petitioner's failure to timely file his Petition. (ECF No. 60 at 19).

## II.    EVIDENTIARY HEARING

Two witnesses testified at the hearing: attorney Wayne Mitchell and Petitioner. The relevant testimony is summarized below.

### A.    Testimony of Wayne Mitchell, Esq.

Mr. Mitchell is an attorney licensed to practice law in Florida since 1990. (Hr'g Tr. 19:17-19). Mr. Mitchell worked as an independent contractor in attorney Daley's office from the summer of 2013 through the end of 2014. *Id.* at 20:1-5. In October 2019, Petitioner's father called Mr. Mitchell to inquire whether Mr. Mitchell was working on his son's case. *Id.* at 22:4-10.

3

Mr. Mitchell explained that he had never been retained to work on Petitioner's case and was unfamiliar with the case.  *Id*. at 22:8-13.  Subsequently, in January 2020, Mr. Mitchell received a letter from Petitioner, asking whether Mr. Mitchell was working on Petitioner's case.  *Id*. at 22:14-15.  Mr. Mitchell explained to Petitioner that he never worked on Petitioner's case, nor did he intend to do so in the future.  *Id*. at 22:18-20; *see also id*. at 24:24-25:3; 28:15-17.

### B.      Petitioner's Testimony

Petitioner testified that attorney Daley came highly recommended by other inmates.  *Id.* at 35:21-25.  Accordingly, in July 2013, Petitioner and attorney Daley signed a contract for legal services.  *Id.* at 38:1-39:7.  According to Petitioner, attorney Daley agreed to represent Petitioner on both state and federal post-conviction matters for $18,000, to be paid in installments.[4]  *Id.* at 40:11-41:22.  Petitioner paid attorney Daley $5,000 in August 2013, and $4,000 in February 2014, and produced receipts confirming these two payments.  *Id.* at 40:12-41:6; *see also* (ECF No. 101-1 at 60) (Jt. Exh. 5).  When asked whether Petitioner made any additional payments to attorney Daley, Petitioner initially testified that no other payments were made because attorney Daley had "started to slowly drift away," so he and his father "made [no other] payments."  (Hr'g Tr. 90:1-7).  Unprompted, however, Petitioner then added that he and his father had made another payment of $2,000, but he had never mentioned it until the hearing because he had no record to corroborate the payment "because [it was made] through another account or something."  *Id*. at 90:9-15.  According to Petitioner, the second $2,000 payment was made two or three months after the February 2014 installment.  *Id.* at 100:7-18.

---

[4] Respondent argues that the parties' contract for services encompassed only attorney Daley's representation on state post-conviction matters.  *See, e.g.,*  (ECF No. 11 at 1).  The Court, however, need not decide this dispute because it is irrelevant to the undersigned's analysis of Petitioner's reasonable diligence for equitable tolling of the limitations period.

According to Petitioner, the only actions attorney Daley took on Petitioner's behalf were filing: (i) a notice of appearance in the Fourth DCA; (ii) a motion for extension of time to file the appeals with the Fourth DCA; and (iii) a motion for reconsideration after the Fourth DCA denied Petitioner's appeal. *Id*. at 42:1-11. Petitioner further testified that, between 2013 and early 2015, he wrote numerous letters to attorney Daley inquiring about the status and timeliness of Petitioner's post-conviction motions, but he did not have copies of these letters to file with the Court because the Florida Department of Corrections had lost his entire legal file (containing the relevant correspondence) during one of his institutional transfers in 2017 or 2018. *Id*. at 45:22-47:4.

Despite the loss of his legal file, Petitioner produced three letters at the evidentiary hearing that Petitioner testified his father had saved and only recently produced to Petitioner.[5] *Id*. at 47:12-48:13; 84:2-11; *see also* (ECF No. 101-1 at 67, 71, 73-74) (Jt. Exhs. 8, 10, 11, respectively). The letters are dated September 6, 2013, January 4, 2014, and December 1, 2014. (Jt. Exhs. 8, 10, 11, respectively). Petitioner testified that he received the letters from his father about a year ago. (Hr'g Tr. 84:2-11; 85:7-11). Relevant to the timing of the letters, Petitioner confirmed that towards the middle of 2014, he was incarcerated at Tomoka Correctional Institution ("Tomoka") in Daytona Beach, Florida. *Id*. at 86:17-87:5; 88:7-8.

Petitioner testified that beginning in 2010, years before hiring attorney Daley and years before the Fourth DCA mandate had issued, he took it upon himself to "learn a little bit about the law . . . and so [he] kind of kn[e]w about the timing" of the petition, including the concept of equitable tolling. *Id*. at 48:22-49:10. In addition, Petitioner testified that he had learned from the

---

[5] Relatedly, and somewhat contradictorily, Petitioner also testified that his father could not attend the evidentiary hearing due to memory loss. *See id*. at 34:13-25.

prison law clerks that he had "a year [to file] for the federal habeas [petition]." *Id*. at 49:12-21. According to Petitioner, he repeatedly voiced his concerns about the federal limitations period to attorney Daley. *Id*. at 49:22-25. Petitioner testified that "[t]imeliness" was his "great[est] concern." *Id.* at 49:24-25. In response, attorney Daley reassured Petitioner that everything was in order and that he was in good hands. *Id*. at 49:25-50:2.

Petitioner further testified that after the Fourth DCA denied the motion for rehearing and issued its mandate in November 2013, attorney Daley told Petitioner that the federal limitations period would not begin to run until 90-days after the mandate had issued, i.e., February 2014 (meaning that the federal limitations period would not expire until February 2015).[6] *Id.* at 50:3-13, 51:3-23; 53:8-17; 70:12-71:10; 71:22-73:7. Despite attorney Daley's failure to meet even this purportedly extended filing deadline of February 2015, Petitioner continued to believe that he was in "great hands" and continued to "just wait on" attorney Daley to file the petition. *Id*. at 52:1-5.

Ultimately, based on attorney Daley's lack of communication and unresponsiveness, Petitioner filed a Florida Bar complaint against attorney Daley. *Id*. at 56:1-12. Petitioner testified to several different dates for filing the Bar complaint, including, for example: (i) between December 2014 and January 2015, *see id*. at 58:7; 58:21-25; and (ii) around February or March 2015.[7] *Id*. at 59:24-25. Petitioner further stated that he received a response from the Florida Bar in late September 2015. *Id.* at 80:3-7. The response advised Petitioner that attorney Daley had been disbarred. *Id.* at 60:17-20.

---

[6] Notably, this is the first time during the six-year litigation that Petitioner has made this allegation.
[7] In an affidavit filed in anticipation of the hearing, Petitioner stated that he contacted the Florida Bar "sometime around summer of 2015." (ECF No. 93 at 2). Furthermore, supplemental records filed by Respondent confirm that Petitioner was incarcerated at Hardee Correctional Institution ("Hardee") from June 2015 to March 2017. (ECF Nos. 100-1 at 5, 101-1 at 2). Therefore, the *earliest* Petitioner could have mailed his Bar complaint, which is stamped as being mailed from Hardee, was June 2015.

According to Petitioner, after receiving the response from the Florida Bar, he "spent months" researching possible civil remedies against attorney Daley.  *Id.* at 61:11-15.  Although Petitioner acknowledged that he did not make any direct attempts to contact the Court or Clerk of Court to confirm whether his federal habeas petition had been filed, Petitioner testified that he inquired about the status of his petition through the law librarian at Okeechobee Correctional Institution ("Okeechobee"), who checked the federal docket.  *Id.* at 61:16-62:12; 65:14-24.  Petitioner thus learned through the prison librarian that no federal habeas petition had been filed. *Id.* at 66:11-17.  Petitioner claimed that this was the first time he had actual knowledge that his federal petition had not been filed.  *Id.* at 60:4-61:13; 66:1-18; 77:5-9.  Petitioner, however, has no documentation to corroborate this exchange with the librarian because his legal file was lost during a transfer between institutions in 2017 or 2018.  *Id.* at 62:13-20.  Thereafter, Petitioner claims to have contacted various attorneys (whose names he could not recall), but none would take his case. *See id.* at 67:5-24.  Ultimately, it took Petitioner "a few months" to file his federal habeas petition, as he spent time researching possible civil remedies and learning federal habeas procedures.  *Id.* at 66:17-21; 67:1-4; 68:4-19; 99:8-100:5.  According to Petitioner, filing *pro se* in state court was easier than filing in federal court.  *Id.* at 69:6-18; 99:15-100:3.

As to the federal limitations period, Petitioner testified that between November 1, 2013, and November 1, 2014, he was unaware that his federal petition had not been filed.  *Id.* at 74:9-75:17.  Rather, Petitioner stated that attorney Daley had told him in December 2014 that the petition had been filed and that he would send Petitioner a copy, which Petitioner never received, thus prompting Petitioner to file a Bar complaint.[8]  *Id.* at 74:19-25.  According to Petitioner, he

---

[8] This is the first time Petitioner alleged that attorney Daley had told Petitioner that the federal petition had been filed.

7

did not actually learn that his petition had not been filed until early 2016 when the prison librarian checked the federal docket.  *Id*. at 75:24-76:9; 77:1-22; 78:22-79:1.  When confronted with his inconsistent allegations in the Bar complaint, Petitioner said he "alleged that because [he had] never gotten any response for anything" from Daley.  *Id.* at 76:10-14.  Petitioner nonetheless acknowledged that: (i) the Bar complaint alleges attorney Daley "had never filed the petition;" and (ii) as of the filing of the Bar complaint in 2015, Petitioner knew that attorney Daley had abandoned him.  *Id*. at 77:16-18; 78:8-14.  Lastly, Petitioner confirmed that he filed his *pro se* Petition on April 18, 2016, seven months after learning of attorney Daley's disbarment.  *Id*. at 98:1-16; 103:20-24.

## III.   <u>CREDIBILITY FINDINGS</u>[9]

In making credibility determinations, the undersigned weighs the witnesses' testimony, considering such factors as their interests in the case, the consistency or inconsistency of their testimony, and their demeanor on the stand.  *See Rizo v. United States*, 662 F. App'x 901, 912 (11th Cir. 2016) (citing *United States v. Ramirez-Chilel*, 289 F.3d 744, 750 (11th Cir. 2002)) (using similar factors to make credibility determination in § 2255 proceeding); *Pierrelus v. United States*, No. 18-CV-24996, 2021 WL 724922, at *4 (S.D. Fla. Jan. 1, 2021) (same).  The consistency or inconsistency of testimony and the plausibility or implausibility of testimony are also relevant considerations when determining witness credibility.  *Pierrelus*, 2021 WL 724922, at *4 (citing to *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)).  After weighing these factors, the undersigned finds Mr. Mitchell's testimony fully credible.  Conversely, the undersigned finds

---

[9] The undersigned's credibility findings are limited to the "diligence" prong of the equitable tolling analysis.  Credibility issues related to the "extraordinary circumstances" prong, such as the scope of the parties' contract and claims of attorney abandonment, are not addressed in this Report and Recommendation, as the Court has determined that it need not address the second or third prongs of the equitable tolling analysis.  *See* Section V, *infra*.

that parts of Petitioner's testimony are not credible.  At best, Petitioner is an unreliable historian.

At worst, Petitioner fabricated favorable evidence to support his claim.  More specifically, the

undersigned finds the following testimony and evidence presented by Petitioner is not credible:

### A.  Petitioner's Testimony Regarding Knowledge of the Limitations Period

During this more than six-year litigation, Petitioner consistently admitted in court filings

that he knew about the AEDPA limitations period and that he advised attorney Daley that the

limitations period began on November 1, 2013, and expired on November 1, 2014.  *See*

(ECF Nos. 4 at 3, 18 at 4, 56 at 28).  Yet, at the evidentiary hearing, Petitioner asserted two entirely

new and contradictory claims: (i) that he was not aware the limitations period began on November

1, 2013, and expired on November 1, 2014; and (ii) that attorney Daley told him that the limitations

period began to run 90-days after the Fourth DCA's mandate, i.e., in February 2014.

As to Petitioner's first new claim, the overwhelming record evidence reflects that Petitioner

knew the federal limitations period commenced in November 2013, and the filing deadline was

November 2014.  *See, e.g.*, (ECF No. 18 at 4).  Moreover, Petitioner testified that beginning in

2010, he took it upon himself to "learn a little bit about the law . . . and so [he] kind of kn[e]w

about the timing" of the petition, including the concept of equitable tolling.  (Hr'g Tr. 48:19-

49:10).  As well, Petitioner testified that he had learned from the prison law clerks that he had "a

year [to file] for the federal habeas [petition]" and claimed that he repeatedly voiced his concerns

about timeliness with attorney Daley because "[t]imeliness" was his "great[est] concern."  *Id.* at

49:12-25.  Thus, Petitioner's contradictory testimony on this issue is not credible.

As to attorney Daley's purported misadvise or miscalculation that the limitations period

began running in January 2014 (thus expiring in January 2015), Petitioner never raised this until

the hearing.  In any event, this argument is of little help to Petitioner, as the Supreme Court has

held "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007); *see also Holland v. Florida*, 560 U.S. 631, 651-52 (2010). Given Petitioner's motive, weighed against the many opportunities Petitioner had to make this disclosure during the six years of litigation, the undersigned finds Petitioner's recent claim is not credible.

    **B. Petitioner's Knowledge that Attorney Daley Had Not Filed the Petition**

    At the hearing, Petitioner testified that between November 1, 2013, and November 1, 2014, he did not have actual knowledge that his federal habeas petition had not been filed. (Hr'g Tr. 74:9-75:17). Petitioner also testified that around December 2014, attorney Daley had told him that the petition had been filed and would send him a copy, which he never received. *Id*. at 74:19-25. Daley's failure to deliver the federal habeas petition prompted Petitioner to file a Bar complaint. *Id*. Petitioner testified that he did not actually learn that his petition had not been filed until early 2016 when the prison librarian checked the federal docket on his behalf. *Id*. at 75:24-76:9; 77:1-22; 78:22-24. This testimony is not credible.

    This is the first time during the pendency of this case that Petitioner made these claims, which appear helpful to his case. In the Bar complaint and numerous pleadings throughout the litigation, Petitioner claimed that attorney Daley abandoned him without filing his federal habeas petition. (ECF Nos. 18 at 2-8; 60 at 4-5; 101-1 at 62-63). The Bar complaint, for example, alleged that: (i) attorney Daley failed to file the federal petition after "affirmatively misinform[ing]" Petitioner that the attorney would file it; and (ii) Petitioner was prejudiced by Daley's failure to file because he was now "time barred in federal court." (ECF No. 101-1 at 62-63) (Jt. Exh. 6). In addition, in February 2022, Petitioner filed an affidavit with the Court attesting to these same facts. (ECF Nos. 54 at 6-7, 56 at 28-29). When confronted on cross-examination with these

contradictions, Petitioner explained that he "alleged that [in the Bar complaint] because [he had] never gotten any response for anything" from Daley. (Hr'g Tr. 76:10-14). Petitioner nonetheless acknowledged that: (i) the Bar complaint alleges attorney Daley "had never filed the petition;" and (ii) as of the filing of the Bar complaint in 2015, Petitioner knew that attorney Daley had abandoned him. *Id*. at 77:16-18; 78:8-14. Under these circumstances, the undersigned concludes that Petitioner's new claims seem to be a last-ditch effort to extend the timeline for the Court's evaluation of Petitioner's diligence for purposes of equitable tolling.

In the face of overwhelming record evidence contradicting Petitioner's testimony, the undersigned finds that Petitioner's testimony on these issues is not credible.

### C. Petitioner's Letters to Attorney Daley

Throughout this litigation and during the hearing, Petitioner has consistently claimed that he wrote to attorney Daley inquiring about the status and timeliness of Petitioner's post-conviction motions. *See, e.g.*, (ECF Nos. 18 at 2-8, 60 at 4-6). Until the hearing, Petitioner had asserted that he did not have copies of these letters because the Florida Department of Corrections had lost his entire legal file (containing the relevant correspondence) during one of his institutional transfers in 2017 or 2018. (Hr'g Tr. 45:22-47:4); (ECF Nos. 37 at 1, 60 at 8). At the hearing, however, Petitioner produced three letters, which he claims his father had saved and given to him about a year ago. (Hr'g Tr. 47:12-48:13; 84:2-11); *see also* (ECF No. 101-1 at 67, 71, 73-74) (Jt. Exhs. 8, 10, 11). The letters are dated September 2013, January 2014, and December 2014. *See* (ECF No. 101-1 at 67, 71, 73-74) (Jt. Exhs. 8, 10, 11, respectively).

But the timing, content, and face of the letters cast serious doubt on their legitimacy. First, each letter bears a stamp indicating the letter was received for mailing by an officer with the initials "EB" at Okeechobee. The last of the letters (dated December 2014) is stamped like the earlier

two, as having been received for mailing by officer EB at Okeechobee.  (ECF No. 101-1 at 73) (Jt. Exh. 11).  Petitioner, however, was incarcerated at Tomoka, not Okeechobee, in December 2014.  (Hr'g Tr. 86:17-87:5; 88:7-8).  Moreover, post-hearing supplemental prison records filed by the Respondent confirm that Petitioner was, in fact, incarcerated at Tomoka in December 2014. *See* (ECF No. 110-1 at 2, 4-5).  Accordingly, Petitioner could not have mailed the December 2014 letter from Okeechobee because Petitioner was incarcerated at Tomoka at the time.

Another indicium of forgery is EB's initials on each of the letters.  As noted previously, the three letters bear the same prison official's initials, "EB," as having stamped the letters for mailing.  Not only are the officer's initials the same, but the handwriting and size of the lettering are also identical in all three letters.  It strains credulity that the same officer, or different officers with the same initials and identical handwriting, handled the three letters over this 14-month period.

Next, and perhaps most damaging, the December 2014 letter contains an internal inconsistency that confirms its illegitimacy.  This letter bears the Okeechobee stamp initialed by EB, but Petitioner's handwritten return mail address is listed as Tomoka.  This internal inconsistency leads to the conclusion that Petitioner fabricated the letters to support his claim for equitable tolling.

Petitioner further testified that he received the letters from his father approximately one year before the evidentiary hearing.  (Hr'g Tr. 84:2-11; 85:7-11).  Yet, knowing the relevance of these letters to his claim for equitable tolling, Petitioner waited until the November 2022 hearing to reveal the letters' existence to the Court and Respondent.  Petitioner had ample opportunities to file the letters but inexplicably did not.  Thus, the timing of their production weighs against Petitioner.

For these reasons, the undersigned finds that the letters and Petitioner's testimony surrounding these letters are not credible. Accordingly, the Court will not consider the letters or the testimony surrounding the letters for purposes of this Amended Report and Recommendation.

## IV.    LEGAL STANDARDS

The AEDPA establishes a one-year limitation period for a state prisoner to file a federal petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitations period is tolled for "[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Here, there is no dispute that the deadline for filing Petitioner's § 2254 was November 1, 2014. *See, e.g.*, (ECF Nos. 4 at 3, 18 at 4, 60 at 6). Petitioner, however, did not file his § 2254 until April 2016, almost one and a half years after that deadline. (ECF Nos. 1, 17 at 4). Petitioner argues that he is nonetheless entitled to equitable tolling of the limitations period. *See* (ECF Nos. 4 at 4-5, 18 at 5, 54 at 1, 58 at 4-7).

A federal habeas petitioner is entitled to equitable tolling of the limitations period only if he establishes the three necessary prongs, i.e., that: (i) Petitioner diligently pursued his rights; (ii) an extraordinary circumstance, such as attorney abandonment, prevented the timely filing of the petition; and, if so, (iii) a causal connection between the attorney abandonment and Petitioner's failure to timely file the petition. *See Holland*, 560 U.S. at 649; *Lawrence*, 549 U.S. at 336; *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) (requiring a causal connection between alleged extraordinary circumstances and the late filing of the petition); *Lawrence v. Florida*, 421 F.3d 1221, at 1226-27 (11th Cir. 2005) (same). Each prong must be established before equitable

tolling can be applied.[10]   *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1225 (11th Cir. 2017).

Moreover, "[t]he burden of proving circumstances that justify the application of the equitable

tolling doctrine rests squarely on the petitioner." *San Martin,* 633 F.3d at 1268 (citation omitted);

*see also Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1158 (11th Cir. 2014)

(citing *Hutchinson*, 677 F. 3d at 1099).

## V.   REASONABLE DILIGENCE ANALYSIS

To obtain equitable tolling of the limitations period under the AEDPA, a petitioner must

show that he diligently pursued his rights. *Holland,* 560 U.S. at 649.  The diligence required of a

petitioner under the equitable tolling analysis is "reasonable diligence," not "maximum feasible

diligence." *Id. at* 653 (quotation marks omitted).  Moreover, "[d]ue diligence . . . does not require

a prisoner . . . to exhaust every imaginable option, but rather to make reasonable efforts." *Aron v.

United States*, 291 F.3d 708, 712 (11th Cir. 2002).  Lastly, the due diligence inquiry is "an

individualized one that must take into account the conditions of confinement and the reality of the

prison system." *Id.* (quotation marks omitted).

Having considered the circumstances culminating in the untimely filing of the Petition, the

undersigned finds that Petitioner did not diligently pursue his rights and is therefore not entitled to

---

[10] All prongs of the equitable tolling analysis must be met.  Because the undersigned finds that
Petitioner failed to establish that he acted with the requisite diligence, the undersigned need not
determine whether Petitioner's allegations of attorney misconduct/abandonment qualify as an
exceptional circumstance or whether a causal connection existed between the extraordinary
circumstance and the untimely filing of the petition.  *See, e.g., Jackson v. Sec'y, Dep't of Corr.*,
No. 16-CV-110/LC/CJK, 2017 WL 3276886, at *4 (N.D. Fla. July 26, 2017), *report and
recommendation adopted*, 2017 WL 3816102 (N.D. Fla. Aug 31, 2017) (declining to decide
whether an extraordinary circumstance prevented timely filing where petitioner did not meet his
burden of showing that he pursued his rights diligently); *see also McBee v. Warden*, 671 F. App'x
763, 764 (11th Cir. 2016) (same); *Hutchinson v. Fla.*, 677 F. 3d 1097, 1103 (11th Cir. 2012)
(same); *Melson v. Comm'r, Ala. Dep't of Corr.,* 713 F.3d 1086, 1090 (11th Cir. 2013) (same);
*Perez v. Florida*, 519 F. App'x 995, 997 (11th Cir. 2013) (same).

equitable tolling of the limitations period.  As discussed below, Petitioner waited 17½ months (from November 2014 to April 2016) after the limitations period had expired to file his *pro se* Petition, doing little to protect his rights other than filing a Bar complaint in June 2015. Alternatively, even accepting Petitioner's newest argument that the earliest he should be expected to have filed his *pro se* petition was September 2015, when the Florida Bar advised him of attorney Daley's disbarment, the seven-month delay between September 2015 and his filing of the petition in April 2016 is similarly inexcusable.  Both periods are discussed below.

### A.  Petitioner's 17½-Month Delay (November 2014 to April 2016)

Prior to the evidentiary hearing, Petitioner had consistently admitted knowing that the AEDPA limitations period began to run in November 2013 and expired in November 2014.  *See, e.g.*, (ECF Nos. 4 at 3, 17 at 3, 18 at 4).  Furthermore, Petitioner testified that beginning in 2010, years before hiring attorney Daley and years before the Fourth DCA's mandate had issued, he decided to "learn a little bit about the law . . . and so [he] kind of kn[e]w about the timing" of the petition, *including the concept of equitable tolling*.  (Hr'g Tr. 48:19-49:10) (emphasis added). Petitioner further testified that he had learned from the prison law clerks that he had "a year [to file] for the federal habeas [petition]." *Id.* at 49:12-21.  Petitioner further asserts that he voiced his concerns (in phone conversations and correspondence) with attorney Daley about the federal limitations period because "[t]imeliness" was Petitioner's "great[est] concern." *Id.* at 49:22-25; *see also* (ECF No. 54 at 6-7).  This evidence demonstrates that Petitioner was well aware of the November 2014 limitations period.

Nonetheless, although well aware of the filing deadline, Petitioner did nothing during the limitations period to confirm whether the petition had been filed or obtain proof of filing other than remind attorney Daley of the deadline and wait for attorney Daley to file it. (Hr'g Tr. 52:1-

5).  This wait-and-see attitude is woefully insufficient to establish diligence under the equitable tolling analysis.  *See San Martin*, 633 F.3d at 1270 (finding that petitioner lacked diligence where petitioner had knowledge of pending state case but took no action to confirm its status, and waited 349 days after judgment appeared on the docket to file a motion in state court for post-conviction relief); *cf. Downs v. McNeil*, 520 F.3d 1311, 1323-24 (11th Cir. 2008) (finding that petitioner acted with reasonable diligence where petitioner "did his best to remain informed of the status of his state court proceedings as they related to his federal limitations period" and sent "regular letters to counsel, participat[ed] in periodic meetings, and request[ed] confirmation that his state and federal motions were being drafted and filed in a timely manner.").

Petitioner relies on *Maples v. Thomas*, 565 U.S. 266 (2012), to support his argument that he should not be faulted for failing to act on his own behalf during this time.  (ECF Nos. 18 at 4-7, 116 at 11).  But *Maples* is inapposite to the facts of this case.  The *Maples* court found that "a client cannot be faulted for failing to act on his own behalf *when he lacks reason to believe* his attorneys of record . . . are not representing him."  *Id.* at 283 (emphasis added).  But here, Petitioner had ample reason to believe attorney Daley was not representing him.  Indeed, Petitioner testified that he (and his father) stopped paying attorney Daley due to his unresponsiveness.  (Hr'g Tr. 90:1-7).  Under these circumstances, it was unreasonable for Petitioner to simply continue to wait on attorney Daley to act.  Rather, after weeks and then months of unanswered calls, letters, and stalling tactics, a reasonably diligent prisoner would have taken affirmative steps to protect his federal habeas rights—especially as the filing deadline approached.  Nothing prevented Petitioner from filing a *pro se* § 2254 petition or a protective petition to toll the limitations period.  *See Hutchinson*, 677 F.3d at 1102 (noting that petitioner could have filed the federal petition "on or soon after" the expiration of the deadline "[b]y simply changing the name of the court in which the petition was

to be filed"). Petitioner could also have checked the federal docket to confirm whether his petition had been filed. But Petitioner did none of these things. Thus, Petitioner's failure to take any independent action on his own behalf during the limitations period and then waiting *one and a half years after the limitations period expired* to file his *pro se* Petition precludes a finding of reasonable diligence.

### B. Petitioner's 7-Month Delay (September 2015 to April 2016)

In an apparent effort to tilt the equitable tolling chronology in his favor, Petitioner argues that the earliest he could have been expected to file the federal petition was September 2015 (not November 2014), when he learned that attorney Daley had been disbarred, "especially where his attorney convinced and reassured [Petitioner] that things were going according to plan." *See* (ECF No. 112 at 15). But Petitioner's argument that the Court's analysis of his diligence should begin on this later date is legally and factually unsupported.[11] *See, e.g.*, *San Martin*, 633 F.3d at 1266 (noting that the limitations period runs from when a judgment becomes final, not when petitioner becomes aware that judgment is final). Moreover, even accepting Petitioner's argument, Petitioner cannot change the fact that he waited *seven months*—from September 2015 to April 2016—to file his *pro se* federal habeas petition. This seven-month delay militates against a finding of diligence.

The Eleventh Circuit's decision in *Jackson v. Secretary, Department of Corrections*—also involving attorney Daley and Mr. Mitchell—guides the undersigned's conclusion. 782 F. App'x 774, 775-76 (11th Cir. 2019); *see Hutchinson,* 677 F.3d at 1099 (quoting *Holland*, 560 U.S. 650) (noting that equitable relief is flexible, and courts should "draw upon decisions made in other

---

[11] At the hearing, Petitioner went a step further to argue that he did not actually learn that his Petition had not been filed until early 2016 when the prison librarian checked the federal docket on his behalf. (Hr'g Tr. 75:24-76:9; 77:1-22; 78:22-24). For the reasons discussed above, *see* Section III.B. at 10-11, *supra*, this newest argument is rejected.

similar cases for guidance.").   In *Jackson*, the petitioner retained attorney Daley to handle "any appeal" of his state court motion for post-conviction relief, including federal habeas corpus proceedings.   782 F. App'x at 775.   While the petitioner's state post-conviction motion was pending, attorney Daley was disbarred.   *Id.* at 776.   The petitioner only discovered that his state post-conviction motion had been denied and the federal limitations period had expired after his mother checked the state court's online docket.   *Id.*   Instead of immediately filing a federal habeas petition, the petitioner waited two months to file an attorney-drafted habeas petition.   *Id.*   On these facts, the Eleventh Circuit affirmed the District Court's conclusion that the petitioner "lack[ed] . . . diligence" and equitable tolling of the limitations period was not warranted.   *Id.* at 778.   The same rationale applies here.

Based on the record evidence and the credibility findings in this Report and Recommendation, at the time Petitioner filed the Bar complaint in June 2015, Petitioner knew that: (i) his petition had not been filed; (ii) the federal limitations period had expired; (iii) the petition was time barred; and (iv) his attorney had abandoned him.   (ECF No. 101-1 at 62-63).   Under these circumstances, a reasonably diligent prisoner seeking to protect his rights would have taken immediate steps to file the federal habeas petition.   Petitioner could have drafted and filed a *pro se* federal habeas petition (as he had done in state court) or a protective petition.[12]   *See Hutchinson*, 677 F.3d at 1103 (noting that petitioner "had in hand a petition that he could have re-labeled and filed *pro se* in federal court within three weeks after the one-year limitations period ran").   Instead,

---

[12] Ultimately, Petitioner used his state court pleadings as a template for the habeas petition: of the 20 grounds for relief in the federal petition, 13 came directly from Petitioner's state court motion for post-conviction relief.   *See* (ECF No. 101 at 8, 10).   Petitioner could have—and should have—done this as soon as the limitations period neared.   *Hutchinson*, 677 F.3d at 1103 (noting that petitioner could have re-labeled state court post-conviction motion and filed *pro se* in federal court soon after the one-year limitations period ran).

Petitioner simply waited for the Bar's response and then did nothing to protect his rights for months.   Thus, the undersigned finds that Petitioner's seven-month delay reflects a lack of reasonable diligence.  *See Hutchinson*, 677 F.3d at 1102-03 (finding that petitioner's more than three year delay in filing *pro se* federal habeas petition precluded a finding of diligence where petitioner could have simply re-labeled state court motion and filed *pro se* in federal court within weeks after the expiration of the limitations period); *San Martin*, 633 F.3d at 1270 (finding that petitioner did not exercise reasonable diligence when he waited 349 days to file a state post-conviction motion (thereby tolling AEDPA's statute of limitations) and who then waited another 15 days after the disposition of that motion before filing his federal habeas petition); *Melson*, 713 F.3d at 1089 (petitioner failed to exercise reasonable diligence where he "took no independent steps to ensure that his federal habeas petition was timely filed" and made "no independent effort during [] eight months to locate post-conviction counsel or to file a federal habeas petition on his own.").

During the hearing, Petitioner attempted to justify the seven-month delay between when he learned of Daley's disbarment (September 2015) and when he filed his *pro se* Petition (April 2016).   First, Petitioner testified that the Bar's response directed him to pursue civil remedies, which caused him to divert his attention and spend substantial time researching civil law. (Hr'g Tr. 61:11-15).  Second, Petitioner asserted that once he realized that civil remedies were not available to him, he shifted focus to his federal petition, but it took him several months to become familiar with federal habeas law and filing procedures.   *Id.*  at 66:17-21; 67:1-4; 68:4-19. Petitioner's arguments are unpersuasive for several reasons: (i) the September 2015 letter from the Bar did not direct Petitioner to pursue civil remedies in lieu of filing the petition, but simply alerted him that civil remedies may be available on the "fees" issue (ECF No. 101-1 at 65); and

19

(ii) Petitioner's lack of familiarity with the federal system and lack of legal acumen do not relieve him of his obligation to exercise reasonable diligence. *See Perez*, 519 F. App'x at 997 ("[W]e have not accepted a lack of a legal education and related confusion or ignorance about the law as excuses for a failure to file in a timely fashion.") (citation omitted). Thus, Petitioner's seven-month delay is inexcusable. *See Jackson*, 782 F. App'x at 776 (denying equitable tolling for failure to meet the diligence prong of the equitable tolling analysis where a petitioner waited two months to file an attorney-drafted federal habeas petition).

In sum, equitable tolling is "an extraordinary remedy . . . 'limited to rare and exceptional circumstances and typically applied sparingly.'" *Cole*, 768 F.3d at 1158 (quoting *Cadet*, 742 F.3d at 477); *see also Perez*, 519 F. App'x at 997; *Downs*, 520 F.3d at 1317. This case does not present such circumstances. Here, Petitioner did not establish that he acted with reasonable diligence in pursuit of his habeas rights. Rather, as discussed above, the record reflects his "nearly complete inaction" between the time his conviction became final and the untimely filing of his federal petition, 17½ months after the limitations period had expired. *Melson*, 713 F.3d at 1090 (noting petitioner's "nearly complete inaction" during the more than three and a half years between final state court judgment and filing of his federal petition); *cf. Holland*, 560 U.S. at 639-40 (finding petitioner who immediately drafted federal habeas petition and filed it the day after learning that the AEDPA limitations had expired acted with reasonable diligence). Thus, Petitioner's delay in filing his Petition, whether 17½ months or 7 months, precludes a finding of reasonable diligence. Petitioner's efforts, if accepted as true, came too little, too late. Accordingly, his Petition is untimely.

## VI.   <u>CERTIFICATE OF APPEALABILITY</u>

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Cases.  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the District Court deny a certificate of appealability in its final order.  Rule 11(a) additionally provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the District Judge in the objections permitted to this Report and Recommendation.

## VII.   <u>RECOMMENDATION</u>

For the reasons discussed above, the undersigned finds that Petitioner did not exercise reasonable diligence in pursuing his federal habeas rights.  Thus, Petitioner is not entitled to equitable tolling of the limitations period and his Petition should be dismissed as time barred.  Accordingly, the undersigned respectfully **RECOMMENDS** that the Petition be **DISMISSED** as untimely and a Certificate of Appealability be **DENIED**.

Within **14 days** after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the above findings and recommendations as

provided by the Local Rules for this District.  *See* 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2022); *see Thomas v. Arn*, 474 U.S. 140, 149 (1985).

**DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida, on February 15, 2023.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:    U.S. District Judge Joan Lenard
       All counsel of record